Thank you, Your Honor. My name is Osterhout, appearing for the appellant, DiMario Pickford. If the court please. DiMario Pickford, as the court knows from the papers, obviously, was tried and convicted before a jury. His case was affirmed on direct appeal. Thus far, his post-conviction efforts have been unavailing. Nevertheless, I respectfully suggest to the court that it is difficult to have confidence in the verdict in view of the circumstances that are set forth herein. And this is because there was only one eyewitness, Tamirah Jeffries. Ms. Jeffries gave at least five, up to seven different versions of what she allegedly saw in front of the J&M Market on Seminary Avenue on that evening. She was cross-examined about that, wasn't she? About all versions of her testimony, her statements? Yeah, absolutely. She was cross-examined about them. And the State says that that is adequate and that, therefore, anything withheld by the State wasn't really material. That's another question. That's another question. Yes, it is. But it's related in that sense, I think, Judge Hawkins, because, yes, there was a lot of – excuse me. Well, not just cross-examined. She was corroborated by another independent witness, right? I don't believe so, sir. Okay. You're referring to the one witness who was the equivalent of a jailhouse informer who said that days after the thing, when he was threatened with arrest for car theft, he said that the defendant, the appellant, conveniently confessed to him that he had done it. It's difficult to read his testimony and the cross-examination of him and to conclude that the jury could have put much stock in that. Nobody else saw the event. But we can't look at that. I mean, whether they did or didn't, that's – the testimony is the testimony. We're not here to determine that jailhouse informant's credibility, right? No, sir. But the extraordinary weakness of that evidence and its vulnerability comes into play when we decide whether or not the State's failure to disclose fully the criminal record of the eyewitness, the only eyewitness, is an important material and favorable evidence that was excluded and that we can't be confident in the outcome of a result. I mean, what was not turned over – now, she was impeached by an old misdemeanor embezzlement case. But what was not turned over was a second DUI in 2006, a child endangerment conviction and a pending felony vandalism charge in Louisiana. And she was later convicted, of course, of that one and went to prison there. I think we know all this, but what I'm interested in is the rationale. If the jury convicted in California Mr. Pickford on the basis of evidence that was cross-examined and corroborated badly or not, it seems to me that what was not turned over is potentially cumulative, potentially irrelevant, and not something that a Federal court should scrutinize when the State courts have already done so. Well, I certainly understand that position, but respectfully don't agree in this case. What was not turned over could have been used effectively, and his own lawyer says that in page 76. Well, I'm not sure if it would have been able to be used because those crimes were not crimes of moral turpitude. I don't know that they would have been allowed to be used for impeachment purposes. I'm more curious about the non-certified claim involving ineffective assistance of counsel and whether or not to certify that. It was interesting to me to see so much more information about that in the brief on appeal than I think was presented to the district court judge. I couldn't figure out why the district court judge didn't address some of these significant claims that you're making now on appeal, because you claim that there were witnesses that came forward who say that somebody else did this shooting. And I think in light of, I'm curious about that because I do know there are issues with the witnesses that did testify, including Ms. Jessie. Is it Ms. Jessie? I know there's a lot of inconsistencies and what she testified to wasn't consistent with the medical or the physical evidence. But I'm not quite so sure why that wasn't presented more squarely or clearly before the district court. And I'm wondering what it is we can do about it in light of what I've seen, because you make claims in the appeal brief. You're citing the facts, but they aren't really in the record. Well, Your Honor, the case was tried sort of on a shoestring, and so is the habeas conducted that way. Mr. Pickford filed the – his family scraped together money for his trial, but not enough, according to the record, to do investigation properly. A lawyer did his appeal and post-conviction work also on a shoestring, acting herself to go out and try to find evidence. When it got to the federal court, Mr. Pickford filed that in pro per, and obviously with some guidance from his prior habeas counsel. But, you know, these things were in his – in the record of his submission to the district court in his petition. I don't know why Judge Hamilton didn't give it to him. Well, after looking at this, I think I can see why, because those arguments were not as squarely made or cogently made as you have made them. Did you write the appeal brief? Yes. Yes, on appeal. There were some of these facts that you mention and highlight were in the excerpts of record, but there was no clear, at least from what I can tell. But I don't – what I'm wondering is, did his trial counsel call in witnesses? Some witnesses were presented on his behalf. How about the two that said he was not the shooter? No, they weren't called in by trial counsel, and they both have said in various forums that they made themselves known to trial counsel. How? Because you don't say that – you don't set that out in your brief even. I mean, it's not set out in the facts or anywhere from what I can see. All I see is that somehow they appeared when a defense investigator talked to people, but there's no indication to me that trial counsel knew about them or how he would have known about them. And that's where I'm a little unclear. And I really want to know whether or not supplemental briefing would be helpful on this point. It might be, Your Honor. We have dwelt extensively on the Brady issue, but we have also raised those matters because in several – well, counsel's affidavit, habeas counsel's affidavit set forth her interview with these people. And then they both wrote to the court at the time of sentencing and said that somebody else did it. Who wrote to the court? I'm sorry. Who wrote to the court? One of them was Mr. Carter, I think, that said he observed someone else due to shooting. And then two other witnesses said they saw somebody running away that wasn't Mr. Pickford. But it wasn't cogently – I agree with you. It was not cogently presented in a way that the district court could focus on. That's why I think it needs to be further – Well, but the question is, did he have his opportunity and he missed it? Is it, you know, is it unexhausted? And I don't know the answer to that question. But that's – to me, I mean, the fact that you say that James Carter wrote a letter to the sentencing judge stating that Pickford was not the shooter and that Mr. Hines and Mr. Churchill wrote letters to the sentencing judge saying that Richardson admitted to lying about Pickford's guilt, and then Ms. English wrote a letter to the sentencing judge saying she saw a man with dreadlocks who was not Pickford, you know, shoot him, that's all very, you know, troubling. But I don't know how the lawyer would have known about them. I believe, Your Honor, that – and forgive me, Your Honor, but I believe that those things were brought to the attention of the lawyer according to those witnesses. But, I mean, your statement of I believe they were brought to his attention is – At this point, I just don't know if it's too late, and if it's not too late, what we can do. I mean, how we would go about, you know. I may not be resting that on the firmest evidence, but I am resting it on at least this, that in the letters they wrote to the sentencing judge, they said – I believe, I'm quite certain, not in front of me right now, but they said – they told the lawyer, Mr. Stallworth, and Mr. Stallworth didn't get a hold of them, didn't use them. And we don't know why. His affidavit doesn't address that. No, it doesn't. Yeah. It does address that he would have impeached them with the withheld evidence. I'm sorry? It does say – Mr. Stallworth's affidavit says he would have used as impeachment against Jesse the evidence that was not turned over about the other convictions. He doesn't address this point, though. However, it is an allegation made. And this is what I mean when I say it's difficult. The record is not the best, but it's very difficult to have confidence in this verdict of guilt. What he presented to the federal district court, is that the same state habeas petition? Did he just submit the state habeas petition? Pretty much. Was it changed at all? I don't – I believe it was substantially the same except for being addressed to the district court. And he was pro se? Yes. He was pro se. He had some assistance, as Judge Hamilton noted, from his lawyer. But he did it pretty much on his own, as his family had tried to do in the beginning. And it just wasn't put together well. And he's gotten 50 years to do for this case. And I can revisit just one thing. I understand – I'm running out of time – but I understand Your Honor's concern about whether those things are cumulative that are withheld. I respectfully disagree. She presented herself as a concerned parent, and that's why she lied to the police at first and in various ways along the way. I think the child endangerment could have been brought out effectively to question that, and that vandalism is a felony. And she's supposed to be a public-bearded citizen doing this. Nothing about her is genuine or real. Everything would have helped. And I believe that those things are a substantial probability. A second DUI for a person that says she was cogent, focused, and sober but a little tipsy? Even the DA said that she won't be a neighborhood historian. Well, she was called upon to be a historian of a very specific and important event, and it's amassed her testimony. And anything that was withheld, anything, there's a substantial probability it would have been different had counsel had that. Thank you. Well, I appreciate that, Your Honor. I think I've run out of time. I'll give you a minute or so after to respond. Thank you very much. Thank you. May it please the Court. Pam Critchfield for the State. California. I would like to address the question that you brought up. Yeah, I would like to give you an opportunity to respond to this. Certified. Uncertified. Uncertified issue. So in State court, Ms. Hilberg was appointed for him to do his appeal, and she also did the State habeas petition. So in the excerpts of records starting at ER 25, you will see her declaration as to what she pursued in an effort to enhance the video or the videotape of the interview that Ms. Jessie had with the police several days after the incident. That is the claim that was raised on habeas, ineffective assistance for counsel's failure to enhance that video. That definitely was made, but it does look like there was some references, especially to Ms. Jessie's son who came forward later, or I don't know what time he came forward. Allegedly came forward. Yes, allegedly, but who said that Mr. Pickford didn't arrive until after the shooting. Right, except he wasn't there. How do we know that? That's my point. Then there's references to the statement from State habeas counsel which says, after obtaining trial counsel's file in June of 2011, I could not see any evidence of pretrial preparation nor any documentation of defense witness interviews. But that wasn't the claim that was raised. It was in the excerpt of record to the Federal District Court habeas.  And he didn't raise the claim of ineffective assistance for failure to investigate. I think he may have, is the question, because he makes a reference. I don't have that exactly in front of me, but he makes a reference for him failing to interview witnesses. And then the other items that I'm just looking at and I'd like for you to respond is the private investigator's declaration that trial counsel did not retain an investigator to perform any additional investigation. That's at ER 38. We have Mr. Pickford's mother's declaration. We were unable to pay at trial. I think your opposing counsel mentioned this. Trial counsel's full fee of $25,000. As a result, not much of any investigation was done, although we provided trial counsel with information to follow up upon. To the best of my knowledge, it was not done. And then also an additional statement saying, I don't think they're attached, actually. It says, well, the statement is at ER 76. After trial, the private investigator spoke with Jesse Sangero, who said Pickford arrived at the scene after the shooting, and also spoke with a man named George Carter, who said the shooter was not Pickford, but rather a man with dreadlocks. And then after the trial, State Habeas Counsel spoke with Mr. Hines and Mr. Churchill, who said that witness Daryl Richardson, who's the other corroborating witness, lied in Pickford's case so that Richardson could get out of jail. Which was brought out at trial. He, I mean, he admitted that he was, they were, he was getting a favorable dispensation on his stolen vehicle charge for testifying. But he didn't admit to lying. No, but he admitted that he. Yes. And, of course, if you read the testimony and you read the cross-examination, Mr. Stallworth, I respectfully disagree with Habeas Counsel. It did an excellent job. Listen, you're going into a large number of facts. Okay. The Ninth Circuit says if an issue is not certified for appeal, we should liberally and easily allow an amendment. Why don't we just certify the question? You can re-argue it and we'll get it right. The question of ineffective assistance for failing to investigate was never raised. It would have to be exhausted in state court. That was not presented to the state court. But we don't know if it will, you say that, but maybe you could respond to that in a supplemental briefing, because I'm not so sure that it was. I understand the points you're making. And the question for me is how much is enough? Because he did raise some of these. He certainly raised the Gerald Jesse's son. I mean, the Gerald Jesse's. It's all hearsay. I understand that. I mean, you need declarations for a valid claim. In all due respect, you need declarations from those people. That's the standard. And this is what we have our affidavits saying, this is what I think this witness would say. And why wasn't, why didn't Habeas County, she had her chance to go do that, presumably because she couldn't get declarations from those people. She was being paid. I'm just, you may be ultimately correct. I'm just sharing with you my concern at this stage in light of what was raised and what we should do about it. And your position, if I understand it, is you don't think there was enough, we shouldn't certify. No, I don't think you can expect the state court or the district court to weed through when a claim isn't presented directly, to weed through and say, oh, look here. They can't act as counsel for this. And he had counsel in state court. So she needed to present the claim. And I submit it's because she didn't have a claim. So it wasn't before the state court and it wasn't before the district court. And at this point, it would be untimely. It's a different claim. It doesn't relate back. We're years later. Now, I agree with you that the claim of IAC for failure to enhance the tape is probably the claim that should have been certified by Judge Hamilton rather than a Brady violation on that, because there's no Brady, there's no suppression. The state turned over that videotape to the DA, turned it over to the defense lawyer. And the defense lawyer at that point, if in fact what Ms. Hilberg claims is true, which I have completely disagree with, he could have gone to enhance. I'm sorry, Your Honor. Stay with the facts. Finish out your argument. As to? I don't really care what your view of Ms. Hilberg's credibility is. I want to know what your argument is on what you're trying to say there. As far as the, as far as the. Why don't you move to your next point? Okay. My point in the claims that were certified is that the evidence that, first of all, there was no suppression as to the enhanced version of the tape. And second of all, as to the impeachment evidence, none of it was material. So you're saying we should expand the certificate of appealability not to deal with ineffective assistance of counsel. On the witnesses that Judge Murguia was talking about, we should instead expand it to deal with the issues that Mr. Oosterhuis just argued in terms of disclosure. No. I would disagree. That's what I thought you said, didn't you? I would disagree that the COA would need to be expanded as to the ineffective assistance claim. There was no prejudice. So there's the claim, Judge Hamilton discarded the claim and disposed of it on. You said he should have certified the witness issue for us to look at. No. What are you rolling your eyes like? I'm not. I'm sorry. I'm not. I didn't say that it should have been certified. I think what I meant to say was that the way it's been raised by habeas counsel, it appears to be more of an ineffective assistance claim in his briefs than a Brady violation. Certified or not, our rules permit the panel, if an issue is briefed, to treat it as certified. Your point is that I suppose in the most troubling claim, that is that there might be two witnesses out there, might be two witnesses out there who would testify that someone else was the shooter or that Pickford was not there at the time of the shooting. And your point is counsel had time and opportunity to interview those witnesses and obtain non-hearsay affidavits from them, and that's not part of the record. Correct. Okay. Your opposing counsel addressed some issues involving impeachment. I know your arguments were, I think, in the brief, that they were not crimes involving moral turpitude. Is that right? Correct. So they probably likely would not have been permitted or admitted. But he does raise a point, and I wanted to hear your response to it. One of the crimes was involving parental desertion or child endangerment. Correct. And there was some reference that Ms. Jessie was portrayed as a concerned mother. Whether it was a crime involving moral turpitude or not, would that not have been possible for impeachment? Possibly. She was portrayed as a liar. That was the defense, that she was lying. And the – what they used was all the inconsistent statements that she had made to the police and at the prelim and then versus trial. So if you read the closing argument, that was Mr. Stalwart's argument. I don't believe there was an argument that she was a good mother. There were – and the DA certainly never referenced it in his closing. There were a few references, too, that she had this 15-year-old son who, when Mr. Pickford came around, she was worried about him, you know, somehow harming her son. But I don't believe it was at all – it was very tangential to the case. Okay. Thank you. Thank you. I'll give you a minute. A minute is good, thank you. Okay. Your Honor, the Ninth Circuit, I think, has made it clear that the question is not, strictly speaking, the admissibility of a single item of evidence, but rather whether it can be effectively used to impeach. And I think we have that in this case, this Court's case in Paradis v. Araves, which I regret we didn't cite. May I give the 240, Fed 3rd, 1169, 2001 case? It enlarges upon character cases that we did cite in saying that it's not necessarily whether individual impeachment is admissible, it's whether it can be used to impeach. These things could be used to impeach effectively, I believe, and I respectfully urge that in a case this close, depending on that kind of witness, that anything that's excluded has to be scrutinized very carefully. When she lied at the police station, she said the reason was she was concerned for her son. And I think from that, we can take that this evidence could have been effectively used. And did you try to find these two witnesses who ostensibly would say that your client either wasn't the shooter or wasn't present at the time of the shooting? Your Honor, the furthest, the high watermark there was to inquire further of the efforts of the investigator, who I'm acquainted with, and with State Habeas Council. They said that those people didn't want to come in. It would take the process of the court to force them to do that. That had not been done, should be done. And I think it should be done still, if there's a form in which it could be done to get it right. I think that they could be required to come in, and so could the son, who's in prison right now in Louisiana with his mother, who's also in prison for new charges. But I think that this was never effectively litigated. I concede that. And I think it should be. And I would be happy to rebrief it or to handle any remand to clear it up that can be done. Thank you. Thank you very much. Very much. Thank you both for your arguments. They were very helpful. I appreciate it. That case is now submitted.
judges: Hawkins, Murguia, Murphy